# In the United States Court of Federal Claims

Nos. 16-182C & 16-183C
(Filed:  April 20, 2016)
**\*Opinion originally filed under seal on April 13, 2016\***

| | |
|---|---|
| GEO-MED, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant.<br><br>* * * * * * * * * * * * * * * * * * * *<br><br>MANUS MEDICAL, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | Pre-Award Bid Protest; Department of Veterans Affairs; Small-Business Set-Aside; Improper Bundling; Unduly Restrictive Solicitation; Small Business Participation; Exclusion from Competitive Award |

*James Stephen DelSordo*, Manassas, VA, for plaintiffs.

*Jack Groat*, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Benjamin C. Mizer*, Assistant Attorney General; *Robert Kirschman, Jr.,* Director, Commercial Litigation Branch; and *Scott D. Austin*, Assistant Director, for defendant.  *Bart Evans*, Department of Veterans Affairs, of counsel.

## OPINION

**FIRESTONE**, *Senior Judge*.

The parties in these two related pre-award bid protests, consolidated for the purposes of this opinion, have filed cross-motions for judgment on the administrative record challenging the terms of Solicitation No. VA240C-15-R-0022 (the "solicitation")

for the supply of custom sterile procedure packs to the United States Department of Veterans Affairs (the "VA"). The plaintiffs, Geo-Med, LLC ("Geo-Med") and Manus Medical, LLC ("Manus") argue that the solicitation was improper because first, the contract should have been a partial or total service disabled veteran-owned small business ("SDVOSB") set-aside; second, the solicitation contained unduly restrictive requirements and improper bundling; third, there was an unaddressed organizational conflict of interest ("OCI") that gave an unfair advantage to another bidder, [xxxxxxxxxxxxxxxxx] ("xxxxxxxx") as a result of [xxxxxxxxxx]'s existing position as a Medical Surgical Prime Vendor ("MSPV") for the VA; and fourth, that plaintiffs were wrongly excluded from the competitive range. Plaintiff Manus had previously brought a claim based on substantially the same arguments before the United States Government Accountability Office ("GAO"), which found in favor of the agency on all grounds. Plaintiff Geo-Med filed a protest of the solicitation's terms with the agency on the same basis, and the agency rejected Geo-Med's arguments.

At the oral argument held on March 10, 2016, the court issued a ruling from the bench denying plaintiffs' motions for a preliminary injunction and for a temporary restraining order. The court also dismissed plaintiffs' protests to the extent that plaintiffs relied upon the argument that the procurement should have been a SDVOSB set-aside and the argument that the solicitation contained unduly restrictive requirements and improper bundling. The court dismissed without prejudice plaintiffs' protests to the extent they relied upon allegations that there was an OCI favoring [xxxxxxxxxx]. The court found that this ground for challenging the solicitation was not ripe because an

award had not been made, and if the contract were given to a company other than

[xxxxxxxxxx], the plaintiffs' argument would be moot.  The court further dismissed

without prejudice plaintiffs' claims that they had been wrongfully excluded from the

competitive range, also on ripeness grounds.  In addition, the court also denied the

parties' respective motions to supplement the administrative record.

After the court issued its rulings, the agency awarded the contract to another

offeror, Avid Medical, Inc. ("Avid Medical").  Accordingly, to the extent that plaintiffs'

arguments were premised on the assumption that [xxxxxxxxxx] had an advantage and

thus would be awarded the contract, those arguments are now moot.  This opinion

therefore memorializes the court's bench ruling of March 10, 2016 and amends that

ruling to dismiss with prejudice plaintiffs' protests to the extent they rely upon any

alleged advantage to [xxxxxxxxxx].

In addition, for the reasons stated below, the court now dismisses with prejudice

Manus's assertion that it was wrongly excluded from the competitive range.

Accordingly, Manus's complaint is dismissed in its entirety with prejudice.  The record

before the court does not yet include the agency's debriefing notice explaining its

reasoning for excluding Geo-Med from the competitive range.  Consequently, Geo-Med's

complaint is dismissed without prejudice to the extent Geo-Med challenges its exclusion

from the competitive range and dismissed with prejudice with respect to all other issues.

I.      **BACKGROUND**

A.      **The Solicitation and Plaintiffs' Elimination from the Competitive Range**

The following facts are not disputed and are taken from the administrative record ("AR").

The solicitation at issue in this case is for the procurement of custom sterile procedure packs to be used in seven different Veterans Integrated Service Networks ("VISNs") in the Service Area Office ("SAO") Central region, an area which includes forty-six VA facilities across twenty-one states.  AR 1224.   According to the solicitation, the custom pack program is "designed to develop individualized procedure packs to save on operating room start-up times, cut down on the time between patients, and generally create standard practices that result in hospital effectiveness, efficiency and charge/cost capture."  AR 1232.  Prior to this solicitation, the VISNs in the central region acquired custom sterile packs under various types of contracts with different restrictions, including small-business set-asides, SDVOSB set-asides, as well as unrestricted contracts.  See AR 12405. SAO-Central's contracting office determined that this patchwork system "resulted in lost opportunities for cost reduction, capturing standardization opportunities, increasing the number of purchase orders, and quality consistency risk resulting in potential patient care issues, increased procurement lead time, and at time[s] inappropriate procurement methods."  AR 589.  The agency therefore decided to solicit and award a single requirements contract for the entire central region, under which individual hospitals would be able to order surgical packs in accordance with their needs. Id.

Before issuing the solicitation, the Contracting Officer ("CO") assigned to the procurement, Kimberly Hurt, conducted market research to determine, among other things, whether this procurement should be set aside for small businesses pursuant to FAR § 19.502-2(b). [1]   AR 575-1066.  The CO first searched government databases and websites for capable SDVOSBs who had provided similar products in the past.  AR 578. Her search uncovered sixty-three small businesses, including thirty-nine SDVOSBs and veteran-owned small businesses ("VOSBs").  Id.  However, all of the SDVOSB and VOSB concerns were distributors, not manufacturers.  Id.   Only five of the sixty-three small businesses were manufacturers; however, after analyzing their capabilities, the CO concluded that all five "lacked the capabilities for supporting the planned requirements of the acquisition."  Id.

On January 14, 2014, the CO issued a Request for Information ("RFI") inviting potential suppliers to participate in Industry Days, which were designed to "provid[e] for an opportunity for small businesses to discuss their capabilities."  AR 579.  Eight small businesses, including Manus and Geo-Med, participated in Industry Days and indicated that they were interested in and capable of performing the contract anticipated by the RFI.  AR 579-80.  However, seven out of the eight small businesses, including Manus and Geo-Med, were distributors that would obtain packs of tools manufactured and

---

[1] As discussed in greater detail below, the FAR requires a CO to set aside a contract if there is a reasonable expectation of receiving two offers from qualified small businesses that will manufacture the product to be provided, or that distribute a product manufactured by another small business.  See FAR §§ 19.502-2, 19.102.  The contract will then be set aside for that class of small businesses.

assembled by large companies, and only one was a manufacturer.  Id.  The CO further noted that none of the small-business distributors "had experience supplying to a large geographical area, supplying a variation of packs from complex to minor procedures," and had only "managed or performed contracts for relatively low dollar amounts compared to the estimated amount of the solicitation."  AR 591.

Based on this research, the CO concluded that there was not a reasonable expectation that the agency would receive two or more bids from responsible small business manufacturers, or distributors of products manufactured by small businesses, and therefore the agency was not obligated to set the procurement aside for small businesses or SDVOSBs under FAR §§ 19.502-2(b) and 19.102(f).  AR 591-92.  The CO has the discretion to seek a waiver of the non-manufacturer rule from the Small Business Association ("SBA") pursuant to FAR § 19.102(f)(5).  However, rather than seeking a waiver, the CO determined that an unrestricted competition was the best option, and noted that "[i]n an effort to promote VA's socioeconomic goals, it would be more appropriate to use an evaluation factor which . . . provides a more favorable rating to those Offerors who proposed use of sub-contracting which meets or exceeds the agency's socioeconomic small business goals."  AR 592.

On August 3, 2015, the VA issued the solicitation as an unrestricted firm fixed price, indefinite delivery contract.  AR 1224-1567.  Though the solicitation was not set aside as a small business or SDVOSB procurement, the solicitation did include veteran ownership as one of five factors to be considered.  AR 1254, 1288.  The amended due date for proposals was October 14, 2015. AR 2324.  Six companies bid on the contract, of

which three were large concerns (Avid Medical, [xxxxxxxxxx], and [xxxxxxxxxx]

("[xxxxxxxxxx]")) and three were small businesses (Manus, Geo-Med, and

[xxxxxxxxxx] ("[xxxxxxxxxx]")).  AR 12412, 12429-30.

On December 17, 2015, the CO recommended that Geo-Med be eliminated from

the competitive range.  See AR 12405-34.  Though Geo-Med received full credit for the

Veterans Participation factor, the CO noted that Geo-Med's proposal was rated as

"unacceptable" for the technical capability, quality control, and delivery capability

factors and found that Geo-Med's "proposed approach indicated a lack of understanding

of the methods, resources, and schedules to perform the required effort of this

solicitation," and had the second-highest price of all the offerors.  AR 12433-34.  On

December 18, 2015, Geo-Med was informed of its elimination from the competitive

range.  AR 12442.  Geo-Med requested a post-award debriefing and was informed that

the agency would provide a debriefing after the award was issued.  AR 12439-40.

The agency and the remaining offerors continued negotiations, and on January 7,

2016, Manus sent a response to the agency's list of questions and concerns about its

proposal.  AR 13397-13450.  On January 22, 2016, the agency informed Manus that its

proposal was no longer under consideration.  AR 13604.  In response to Manus's request

for a pre-award debriefing, the agency informed Manus that its proposal "did not

adequately present relevant experience (as defined by the solicitation) that would provide

confidence that the contractor could effectively manage a number of large and complex

medical centers['] custom sterile procedure pack requirements."  AR 13607.  Further,

Manus "did not indicate any involvement in the pack modification process" and had

"limited ability to influence" proposed manufacturing partner Avid Medical's "manufacturing and sterilization process." Id.  The agency found that "Manus did not demonstrate or present any information of how they will monitor their sub-contractor's quality control or performance," and concluded that "[v]alue-added services are provided solely by their partner [Avid Medical] and there were no value-added services present to be solely by Manus." AR 13607 (emphasis added).

### B.    Plaintiffs' Prior Protests

On October 13, 2015, Geo-Med filed an agency level protest alleging that the terms of the solicitation were overly restrictive, contained improperly bundled requirements, had an unresolved OCI, relied upon stale marketing research, and should have been set aside for SDVOSBs.  AR 10173-88.  On January 15, 2016, the agency denied Geo-Med's protest.  AR 10192-93.

On October 9, 2015, Manus filed a protest with the GAO, arguing that the solicitation contained bundling of contract requirements that unfairly benefited MSPVs, was unduly restrictive of competition, contained an unaddressed OCI, and should have been set aside for SDVOSBs.  AR 10196-10217.  With respect to the argument regarding small-business set-asides, the GAO found that the agency conducted adequate market research and determined that there were not at least two responsible small manufacturers likely to bid on the contract.  AR 10222.  Further, the GAO found that the FAR provision allowing a waiver of the non-manufacturer rule "is discretionary, and nothing in the protest record provides a basis for our Office to conclude that the agency's decision not to seek a waiver of the manufacturing requirements was improper." Id.  The GAO found

that because Manus, along with two other small businesses, had submitted a proposal and

affirmed that it could perform the contract, the solicitation did not contain bundling in a

manner that precluded small-business participation.  AR 10223.  The GAO also found

that Manus's claims that the solicitation was overly restrictive failed because Manus had

not "identified any particular solicitation provision it believes to be unduly restrictive."

AR 10224.  Finally, the GAO found that Manus's OCI claims were not ripe because, at

the time that Manus filed its protest, no offers had been submitted and the award had not

yet been made.  AR 10225-26.

On February 5, 2016, the plaintiffs filed their respective complaints and motions

for a preliminary injunction and temporary restraining order seeking to prevent the

agency from awarding a contract under the solicitation.  After conferring with the parties,

the court ordered an expedited briefing schedule on the parties' cross-motions for

judgment on the administrative record, which made the pending motions for injunctive

relief moot.  The plaintiffs filed identical motions in each cass, and the government filed

the same response to both motions.  The court held oral argument on March 10, 2016 and

granted the government's motions for judgment on the administrative record from the

bench.  On March 23, 2016, the government informed the court that the contract had been

awarded to Avid Medical.  The plaintiffs have not sought leave to amend their complaints

to challenge the award to Avid Medical.

## II.   STANDARD OF REVIEW

In a bid protest case, the court applies the standard of review under section 706 of

the Administrative Procedure Act, 5 U.S.C. § 706, and may not set aside an agency's

action unless the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Palladian Partners, Inc. v. United States, 783 F.3d 1243, 1252 (Fed. Cir. 2015) (quoting Savantage Fin. Servs. v. United States, 595 F.3d 1282, 1285 (Fed. Cir. 2010)). In this connection, "[t]he court's task is to determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" Id. (quoting Savantage, 595 F.3d at 1285-86).

"[S]tanding in bid protests is framed by 28 U.S.C. § 1491(b)(1), which requires that bid protests be brought by 'interested parties.'" Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1382 (Fed. Cir. 2012) (quoting 28 U.S.C. § 1491(b)(1)). The Competition in Contracting Act further defines an "interested party" as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2). In a pre-award protest challenging the language of the solicitation, a plaintiff can show a direct economic interest by demonstrating "'a non-trivial competitive injury which can be addressed by judicial relief.'" Sys. Application, 691 F.3d at 1382 (quoting Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1362 (Fed. Cir. 2009)).

## III.   DISCUSSION

### A.   Plaintiffs' Argument that the Solicitation Contained an OCI Benefiting [xxxxxxxxxx] is Moot because [xxxxxxxxxx] was not Awarded the Contract.

Plaintiffs argue that the solicitation as written does not conform with the FAR and contains an unaddressed OCI because one of the bidders, [xxxxxxxxxx], was also

performing a contract for the VA as a MSPV.  The solicitation anticipated that MSPVs such as [xxxxxxxxxx] would deliver the products to the customers.  See AR 1234.  The plaintiffs argue that the solicitation unfairly advantaged [xxxxxxxxxx] because, as an MSPV, [xxxxxxxxxx] possessed "intimate knowledge" of the needs of individual medical centers and had knowledge of the contents and pricing of competitors' surgical packs.  Pls.' MJAR 6-7.  In addition, plaintiffs argued that [xxxxxxxxxx] had an advantage in terms of pricing because [xxxxxxxxxx] would not have to pay the distribution fees that the plaintiffs allege other bidders would have to pay to MSPVs.

The court initially found that this issue was not ripe because, at the time of plaintiffs' protests, the agency had not yet awarded the contract.  The court noted that the plaintiffs had alleged that there was an OCI with respect to only one of the bidders, [xxxxxxxxxx], and therefore if another bidder besides [xxxxxxxxxx] was awarded the contract, the issue would be moot.  Consequently, the court dismissed plaintiffs' protests without prejudice to the extent that plaintiffs relied upon allegations of an unaddressed OCI.

On March 23, 2016, the government informed the court that a bidder other than [xxxxxxxxxx], Avid Medical, had been awarded the contract.  Therefore, the court finds that the plaintiffs' argument that the solicitation included an unaddressed OCI benefiting [xxxxxxxxxx] because of a potential dual role within the VA is moot.  Accordingly, plaintiffs' motions for judgment on the administrative record are denied and their complaints are dismissed with prejudice with respect to the alleged OCI issue.

**B.    The Agency's Decision not to Waive the "Non-Manufacturer" Rule and Issue this Procurement as a SDVOSB Set-Aside was not an Abuse of Discretion.**

At the heart of this protest is plaintiffs' contention that the agency erred by not setting aside the procurement for SDVOSBs.  A CO is required to set aside a procurement for small businesses, with SDVOSBs receiving first priority if the CO has a "reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price . . . ."  38 U.S.C. § 8127(d), see id. at § 8127(i) (giving first priority to SDVOSBs).  The CO is required to conduct market research to determine if there are qualifying firms that meet certain socioeconomic criteria capable of satisfying the agency's needs.  FAR 19.203(d)(1).

In order to qualify for a set-aside, a small business must either manufacture the goods it will provide or distribute good manufactured by another qualifying small business.  FAR § 19.102(f)(1); 15 U.S.C. § 637(a)(17)(B)(iv) (a non-manufacturer may receive the benefit of a set-aside procurement if it "represent[s] that it will supply the product of a domestic small business manufacturer or processor, unless a waiver of such requirement is granted"); see FAR § 819.7003(d) (SDVOSBs "must meet the requirements in [FAR §] 19.102(f) to receive a benefit under" a set-aside procurement).  A CO "may request a waiver" from the SBA of the "non-manufacturer rule . . . if no known domestic small business manufacturers or processors can reasonably be expected to offer a product meeting the requirements of the solicitation."  FAR § 19.102(f)(5).

The plaintiffs acknowledge that the agency would have had to obtain a waiver of the non-manufacturer rule from the SBA in order for plaintiffs to be eligible to participate under a SDVOSB set aside.  However, the plaintiffs maintained in their brief that the agency was required to seek a waiver because there were at least two SDVOSB distributors who had expressed interest in performing the contract.  At oral argument, the plaintiffs acknowledged that this construction would effectively eliminate the non-manufacturer rule, but argued that the CO was nevertheless required to seek a waiver where, as here, similar contracts had been performed by SDVOSBs in the past, and the agency's Office of Small and Disadvantaged Business Utilization ("OSDBU") recommended that the procurement be set aside for SDVOSBs.

The government counters, and the court agrees, that the CO did all that was required of her under the FAR and was not required to seek a waiver of the non-manufacturer rule.[2]  The court finds that plaintiffs' reading of the FAR, which would require a CO to seek a waiver practically any time at least two responsible small distributors were likely to bid on the contract, would essentially obviate the non-manufacturer rule.  As this court has noted, the non-manufacturer rule serves an important policy purpose:

---

[2] The government also argues that the plaintiffs do not have standing to raise this argument because if the agency had made this procurement a SDVOSB set-aside, Manus and Geo-Med would have been excluded from the competition because plaintiffs are not manufacturers.  The court disagrees with the government's standing analysis because the court understands that plaintiffs are primarily challenging the CO's decision not to seek a waiver of the non-manufacturer rule.  Therefore, plaintiffs have alleged a non-trivial competitive injury sufficient to support standing.  See Sys. Application, 691 F.3d at 1382.

> The clear purpose of the non-manufacturer rule is "to prevent brokerage-
> type arrangements whereby small 'front' organizations are set up to bid
> [on] government contracts but furnish the supplies of a large concern."  The
> rules serves, in other words, "to prevent dealers from acting as mere
> conduits for the products of large manufacturers on small business set-aside
> procurements."

Rotech Healthcare Inc. v. United States, 118 Fed. Cl. 408, 414 (2014) (quoting Rotech v.

United States, 71 Fed. Cl. 393, 412 (2006)).  The court does not suggest that either of the

plaintiffs are such a "front" organization; nevertheless, the structure and purpose of the

non-manufacture rule demonstrates that the rule was meant to be the default and a waiver

the exception, not the other way around.

Though the FAR does not define the breadth of the agency's discretion in deciding

not to seek a waiver, the GAO has found that the decision is afforded significant

deference:

> Whether an agency seeks a waiver of such a requirement is more than
> simply a matter of "business judgment." An agency's decision to seek, or
> not to seek, such a waiver from the SBA is more in the nature of a
> programmatic decision rather than a business judgment decision. It is
> essentially a decision not to set-aside the procurement for purchase under
> the 8(a) program. In the absence of any hint of a corrupt or unscrupulous
> motive in the respondent's decision not to seek a waiver of the
> nonmanufacturer rule, there is no basis upon which we could question the
> agency's decision on this issue.

Data Equip., Inc., GSBCA No. 12506-P, 94-1 B.C.A. (CCH) ¶ 26446 (Sept. 28, 1993).

The court need not decide whether a CO has unfettered discretion to decide not to seek a

waiver, but finds that under the circumstances presented in this case, the CO clearly did

not abuse her discretion.  The CO did extensive market research and reasonably

concluded that the agency was not likely to receive at least two offers from qualified

small business manufacturers.  See AR 578-92.  The record demonstrates that the CO

then considered seeking a waiver, but decided instead to allow for open competition

under an evaluation scheme which provided more favorable ratings to socioeconomic

small businesses, including SDVOSBs.  AR 592.  The court therefore finds that the CO's

decision in this case was not in conflict with the agency's obligation to consider its

socioeconomic goals in conducting procurements.

> **C.** **The Plaintiffs Cannot Demonstrate that the Solicitation Contained Improper Bundling or was Unduly Restrictive because the Contract was Not Unsuitable for Small Businesses.**

The plaintiffs also argue that under the solicitation, contracts that were previously

performed under separate procurements for the VISNs that make up the SAO-Central

region will now be performed under a single contract, and thus the contract is an

improper "bundling" of requirements and disadvantages small businesses in favor of

large concerns.  The plaintiffs note that while not all bundling is improper, the CO failed

to seek review from the OSDBU and thus did not comply with the FAR.  Further, the

plaintiffs argue that the solicitation's requirements are unduly restrictive and unfairly

benefit large companies, particularly MSPVs.  The government counters, as the GAO

found, that Manus and Geo-Med are precluded from making this argument on the

grounds that Manus and Geo-Med's participation in the procurement process, and each

plaintiffs' statement that it can fulfill all of the contract's requirements as written,

demonstrates that the solicitation did not preclude small-business participation and thus is

not bundled or unduly restrictive as defined under the FAR.  Further, the government

argues that this is a new "procurement requirement," and therefore does not consolidate previous procurement requirements.

Under the applicable statute, "to the maximum extent practicable" agencies shall "avoid unnecessary and unjustified bundling of contract requirements that precludes small business participation in procurements as prime contractors." 15 U.S.C. § 631(j)(3). Bundling is defined as "consolidating 2 or more procurement requirements for goods or services previously provided or performed under separate smaller contracts into a solicitation of offers for a single contract that is likely to be unsuitable for award to a small-business concern." 15 U.S.C. § 632(o)(2). The applicable SBA regulation further explain that a "bundled" procurement may be "unsuitable for award to a small business concern" due to:

(1)  The diversity, size, or specialized nature of the elements of the performance specified;
(2)  The aggregate dollar value of the anticipated award;
(3)  The geographical dispersion of the contract performance sites; or
(4)  Any combination of the factors described in paragraphs (e)(1), (2), and (3) of this section.

13 C.F.R. § 125.1(e)(1)-(4). If an agency wishes to issue a solicitation for a bundled contract, the CO is required to provide a copy of the proposed acquisition to the SBA explaining why the bundling is "necessary and justified." FAR § 19.202-1(e)(2)(v). If the CO rejects the SBAs recommendation on whether bundling is necessary, the CO "shall document the basis for the rejection and notify the SBA representative." FAR § 19.202-1(e)(4).

Cases from this court and the Federal Circuit have held that in order to constitute bundling, a solicitation must meet two criteria: first, it must "consolidate two or more requirements that were previously procured under separate smaller contracts into a single contract," and second, the solicitation must "likely be unsuitable for award to a small business." Che Consulting, Inc. v. United States, No. 15-1244C, 2016 WL 806817, at *7 (Fed. Cl. Mar. 1, 2016) (quoting Benchmade Knife Co. v. United States, 79 Fed. Cl. 731, 739 (2007)).  Both elements are required; thus if a contract is suitable for award to a small business, "it cannot be considered an example of bundling." Id.

In this case, the CO conducted market research and identified a number of small business that asserted that they could meet the solicitation's requirements.  See AR 578-82. Given that seven out of the eight small businesses who participated in Industry Days, including the three who ultimately bid on the contract, intended only to distribute packs manufactured and assembled by large companies, see AR 12397, 12399, it was reasonable to conclude that a small business would be capable of fulfilling the requirements. Further, as the GAO noted, the plaintiffs both asserted—and still maintain—that they are able to perform under the solicitation.  In response to the question, "Do you currently have the necessary recourse to provide the estimated number of Sterile Custom Packs?  If not, would you be able to obtain the necessary [resources] within 30 days of the contract award?", AR 475, Manus responded that its "manufacturer has the capacity to provide the estimated number of packs for SAO-C and we have the inventory management and distribution capability to meet this demand," AR 528.  In response to the same question, Geo-Med responded simply "Yes."  AR 499-500.  Indeed, the GAO will not even consider

bundling allegations where, as in this case, small business protestors represent that they are capable of performing the allegedly bundled requirements.  See JXM, Inc., B–402643, June 25, 2010, 2010 CPD ¶ 158 at 6–7; Future Solutions, Inc., B–293194, Feb. 11, 2004, 2004 CPD ¶ 39 at 6–7.

Further, as the Federal Circuit has noted, "[t]he statute does not prohibit all bundling of contract requirements, but only 'unnecessary and unjustified bundling.'" Tyler Constr. Grp. v. United States, 570 F.3d 1329, 1335 (Fed. Cir. 2009).  In Tyler, as here, there was a dispute as to whether the anti-bundling provisions of the FAR applied to the solicitation.  Id. at 1334-35.  However, the Federal Circuit determined that whether or not the anti-bundling provisions applied, the procurement did not violate them because the agency "conducted extensive market research before determining that consolidation of the procurement requirements was 'necessary and justified.'"  Id. at 1335.  In this case, as in Tyler, the CO carefully documented her reasoning behind seeking a procurement to cover the entire SAO-Central region, and explained that the current "patchwork" system of multiple procurement contracts "resulted in lost opportunities for cost reduction, capturing standardization opportunities, increasing the number of purchase orders, quality consistency risk resulting in potential patient care issues, increased procurement lead time, and at time[s] inappropriate procurement methods."  AR 689-90.

Plaintiffs' contention that the solicitation is "unduly restrictive" also fails.  An agency is required to "specify its needs and solicit bids or proposals in a manner designed to achieve full and open competition for the procurement."  41 U.S.C. § 3306(a)(1)(A); see also FAR § 6.101(b) ("Contracting officers shall provide for full and open competition

through use of the competitive procedure(s) contained in this subpart that are best suited to the circumstances of the contract action and consistent with the need to fulfill the Government's requirements efficiently.").  However, within those limitations, "[t]he determination of an agency's minimum needs 'is a matter within the broad discretion of agency officials . . . and is not for this court to second guess.'"  Savantage, 595 F.3d at 1285 (quoting Wit Assocs., Inc. v. United States, 62 Fed. Cl. 657, 662 (2004)); see also Tyler, 570 F.3d at 1334 (finding that agencies have "broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation").

In Savantage, the Federal Circuit rejected, on a rational basis standard, a challenge to a solicitation requiring integrated asset, acquisition, and financial systems, despite the plaintiff's objection that the solicitation's requirements effectively guaranteed that only one bidder would qualify for the selection.  Savantage, 595 F.3d at 1285-86.  The court credited the evidence in the administrative record showing the problems posed by the agency's unintegrated system, and found that the agency's preferences in how to solve that problem were "entitled to great weight."  Id. at 1286.   In this case, plaintiffs' argument is based primarily on the premise that the solicitation was designed in such a way as to benefit MSPVs.  However, the fact that an MSPV was not awarded the solicitation severely undercuts plaintiffs' argument.[3]  Further, the record shows that the agency's decision to

---

[3] At oral argument, plaintiffs were unable to say with any precision which of the solicitation's terms were overly restrictive, arguing instead that the fact that the solicitation was so large made it impossible for a small business to compete.

structure the solicitation the way it did had a rational basis.  Accordingly, the court will not second guess the agency's findings.

### D.    The Plaintiffs have not Demonstrated that their Exclusion from the Competitive Range was Improper.

Though the plaintiffs purport to challenge their exclusion from the competitive range, the plaintiffs' brief does not include a rationale for challenging their exclusion to that is separate from the plaintiffs' challenges to the solicitation itself.  Neither plaintiff, for example, argues that the agency wrongly applied the solicitation's criteria in evaluating its technical abilities.  Instead, the plaintiffs argue that the solicitation was flawed because it precluded small business participation.  Because the court has found that this claim is without merit, the court has no independent basis to conclude that Manus and Geo-Med's exclusion from the competitive range was not proper under the solicitation.

At the time the plaintiffs filed their joint briefs, Manus had already received its pre-award debriefing giving the agency's reasoning for excluding Manus from the competitive range.  Therefore, because Manus had every opportunity to raise additional grounds to protest its exclusion from the competitive range, the court now dismisses Manus's complaint with prejudice.  However, Geo-Med requested a post-award debriefing, which it had not received at the time briefing on the motions for judgment on the administrative record was concluded and which is not part of the record before this court.  Therefore, the court will dismiss Geo-Med's complaint without prejudice with respect to its challenge to Geo-Med's exclusion from the competitive range.

## IV.    CONCLUSION

For the reasons stated above, plaintiffs' motions for judgment on the administrative record are **DENIED**.  The government's cross-motions for judgment on the administrative record are **GRANTED**.  Accordingly, the complaint of plaintiff Manus Medical, LLC, Case No. 16-183 is **DISMISSED WITH PREJUDICE**.  The complaint of plaintiff Geo-Med, LLC, Case No. 16-182, is **DISMISSED WITHOUT PREJUDICE** to the extent it challenges Geo-Med's exclusion from the competitive range and **DISMISSED WITH PREJUDICE** as to all other issues.  The clerk is instructed to enter judgment accordingly.  No costs.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge